UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| **JOSE PELAYO, JR.,** | ) |
| **Plaintiff,** | ) |
| v. | ) Case No.: 5:19-cv-1366-LCB |
| **CARL MARQUIS SMITH,** *et al.*, | ) |
| **Defendants.** | ) |

## MEMORANDUM OPINION AND ORDER

This case arises out of an automobile accident between Defendant Carl Marquis Smith and Plaintiff Jose Pelayo, Jr., that occurred on April 24, 2019, in Scottsboro, Alabama. At the time of the accident, Smith was facing criminal charges in Lake County, Indiana and was out on bond pending his trial. As a condition of his pretrial release, Smith was being electronically monitored by Defendant ICU Monitoring, Inc.

The Court has subject-matter jurisdiction over this case pursuant to 28 U.S.C. § 1332, because the parties are geographically diverse, and the amount in controversy exceeds $75,000. Venue is proper because the accident forming the basis of the Plaintiff's claims occurred within the Northeastern Division of the Northern District of Alabama. Before the Court is ICU's motion for summary judgment (Doc. 30), and motion to strike (Doc. 51) certain exhibits. For the

following reasons, the Court finds that ICU's motion for summary judgment is due to be **GRANTED** and that its motion to strike is **MOOT**.

## I. Background

Most of the facts in this case are undisputed. ICU has a contract with Lake County, Indiana where ICU agreed, among other things, to monitor pretrial detainees by means of GPS tracking devices typically worn on a client's ankle. Smith was one of these clients. After being charged with several crimes in Indiana, Smith filed a motion in the Lake County, Indiana Superior Court for a reduction of his bond. On October 1, 2018, Judge Clarence Murray held a bond-reduction hearing and granted Smith's motion in part by reducing his bond to "40,000 [dollars] surety, 4,000 cash, with ICU monitoring, at his own expense." (Doc. 32-9 at 9). Judge Murray then entered a written order reducing Smith's bond "with conditions of ICU Monitoring at the defendant's expense." (Doc. 32-4 at 2).

Afterwards, ICU placed an electronic monitoring device on Smith's ankle and had Smith sign various forms where he agreed to abide by ICU's rules and to pay the required fees. *See* (Docs. 32-10, 32-11, and 32-12). ICU's rules and policies required Smith, among other things, to obey all court orders, pay a weekly monitoring fee, and charge his ankle monitor for two hours every morning. One of the documents Smith signed, entitled, "ICU Monitoring Important Information," provided: "Stay out of NO CONTACT Zones and/or Restricted Areas. You cannot

leave Lake or Porter County [Indiana] unless authorized on your court order." (Doc. 32-11 at 2). Judge Murray's order placing Smith on ICU monitoring does not mention any "no contact zones" or "restricted areas." Further, the order says nothing about whether Smith is subject to house arrest or any other geographical restrictions. At the hearing, Smith told Judge Murray that he lived in Illinois.

On April 24, 2019, while still being monitored by ICU pursuant to Judge Murray's order, a police officer in Scottsboro, Alabama attempted to pull Smith over for a traffic violation. During the stop, Smith fled the scene in the vehicle he was driving, and a high-speed chase ensued. During the chase, Smith crashed into Jose Pelayo, Jr.'s vehicle causing Pelayo to suffer injuries. Smith was then subdued, arrested, charged with several new crimes, and booked into the Jackson County jail. While in jail, the battery on Smith's ankle monitor became low and eventually died. The low battery caused an alert to be sent to ICU. Upon receipt of the alert, ICU took steps to locate Smith and ultimately discovered that he was in jail in Alabama. One of ICU's case managers, Keisha Bravo,[1] generated an "Electronic Monitoring Violation Report" for Smith on April 26, 2019, and faxed it to Judge Murray. (Doc. 32-17 at 3). The report listed three violations: unauthorized leave of home detention,

---

[1] At the time of her employment with ICU, Keisha Bravo's last name was Bean. Some of the documents in this case bear that name.

escape, and failure to follow program rules. Bravo further reported that an "officer [came] into the [ICU] office to have an escape report filed on Carl Smith." *Id*

In his complaint, Pelayo alleged that ICU was negligent for failing to report to anyone that Smith had traveled to Alabama. Pelayo contends that, had ICU made such a report, Smith could have been apprehended before he caused the accident in question. Pelayo also claimed that ICU was negligent in the hiring, training, and supervision of its employees and that its failure to report Smith's travel to Alabama constituted wantonness.

## II. Legal Standard

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. *Id*. at 323. Once the moving party has met its burden, Rule 56(c) requires the non-moving party to go beyond the pleadings and -- by pointing to affidavits, or depositions, answers to

interrogatories, and/or admissions on file -- designate specific facts showing that there is a genuine issue for trial. *Id*. at 324.

The substantive law will identify which facts are material and which are irrelevant. *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986) ("Anderson"). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *See Allen v. Bd. of Pub. Educ. For Bibb Cty*., 495 F.3d 1306, 1314 (11th Cir. 2007); *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *See Id*. at 249.

When faced with a "properly supported motion for summary judgment, [the non-moving party] must come forward with specific factual evidence, presenting more than mere allegations." *Gargiulo v. G.M. Sales, Inc*., 131 F.3d 995, 999 (11th Cir. 1997). As *Anderson* teaches, under Rule 56(c) a plaintiff may not simply rest on her allegations made in the complaint; instead, as the party bearing the burden of proof at trial, she must come forward with at least some evidence to support each element essential to her case at trial. *See Anderson*, 477 U.S. at 252. "[A] party opposing a properly supported motion for summary judgment 'may not rest upon the

mere allegations or denials of [her] pleading, but ... must set forth specific facts showing that there is a genuine issue for trial.'" *Id*. at 248 (citations omitted).

Summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp*., 477 U.S. at 322. "Summary judgment may be granted if the non-moving party's evidence is merely colorable or is not significantly probative." *Sawyer v. Sw. Airlines Co*., 243 F. Supp. 2d 1257, 1262 (D. Kan. 2003) (citing *Anderson*, 477 U.S. at 250-51).

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. "Essentially, the inquiry is 'whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Sawyer*, 243 F. Supp. 2d at 1262 (quoting *Anderson*, 477 U.S. at 251-52); *see also LaRoche v. Denny's, Inc*., 62 F. Supp. 2d 1366, 1371 (S.D. Fla. 1999)("The law is clear ... that suspicion, perception, opinion, and belief cannot be used to defeat a motion for summary judgment.").

### III.  ICU's Motion for Summary Judgement

In its brief in support of its motion for summary judgment, ICU lists 27 facts that it claims are undisputed. Pelayo takes issue with only two. *See* (Doc. 34 at 1).

Specifically, the parties disagree over whether Smith was allowed to travel to Alabama and whether Bravo's characterization of Smith's conduct as an "escape" was accurate. ICU argues that there are no genuine issues of material fact as to either of these claims, and, therefore, that summary judgment is proper. This is because Pelayo's theory of recovery against ICU centers on his contention that Smith was prohibited from traveling to Alabama and that ICU breached its duty to notify the relevant authorities before Smith crashed into Pelayo.[2] Thus, if Pelayo is unable to prove that Smith's travel was somehow restricted, he will be unable to prove that ICU had and/or breached any duties. As will be discussed below, such a failure is detrimental to all Pelayo's claims against ICU.

### a. Judge Murray's order did not prohibit Smith from travelling to Alabama.

In its brief in support of its motion for summary judgment, ICU states the following fact as undisputed:

> "Mr. Smith was not prohibited from traveling outside of Lake County, Indiana, Porter County, Indiana, or Chicago, Illinois by the Court's order and was not prohibited from traveling to Alabama; as a result, it was unnecessary for Carl Smith to obtain permission to travel to Alabama, and doing so was not a violation of the Court Order."

---

[2] It is unclear whether Pelayo is contending that Smith was under house arrest or whether he was merely prohibited from certain types of travel. Pelayo cites several documents that ICU had Smith sign providing that, unless authorized, a person subject to ICU monitoring may not leave Lake County, Indiana or Porter County, Indiana. However, it is undisputed that Judge Murray was aware that Smith did not live in either of those counties. Rather, he lived in Illinois.

(Doc. 31 at 5). In support of that assertion, ICU cites to the deposition testimony of one of its employees, Herbert Smith, III, who stated that Judge Murray's order contained no travel prohibitions at all. (Doc. 32-5 at 108).[3]

In response, Pelayo asserted that Smith was in fact prohibited from traveling to Alabama. In support of that assertion, Pelayo cites to the deposition testimony of another ICU employee, Keisha Bravo. When asked if Smith was in violation of Judge Murray's order by being in Alabama, Bravo replied, "I would say yes." (Doc. 32-13 at 44). However, toward the end of her deposition, Bravo gave contradictory testimony and agreed that Judge Murray's order had no geographic restrictions whatsoever and that Smith did not violate the order by traveling to Alabama. *Id*. at 61-65.

According to Pelayo, the apparent conflict between Herbert Smith's testimony and Bravo's testimony creates a factual dispute as to whether Smith was prohibited from being in Alabama. However, this Court need not rely on either deposition because Judge Murray's order and a copy of the bond reduction hearing are contained in the record. Judge Murray's order provides that Smith's "bond [is] reduced to forty thousand dollars ($40,000) surety/or four thousand dollars ($4,000) case with conditions of ICU Monitoring at the defendant's expense." (Doc. 32-4 at

---

[3] Citations to page numbers in depositions refer to the page number assigned by the court reporter as opposed to the page number assigned by this Court's CM/ECF system.

2). There is no language in the order indicating that the Court was placing Smith under house arrest or that he was prohibited from leaving Lake County--or any other location for that matter. In fact, a review of the transcript of that hearing reveals that Judge Murray knew Smith lived and planned to reside in Illinois while awaiting trial. (Doc. 32-9 at 8). Although there was a brief discussion on the record as to whether ICU, who is based in Indiana, would monitor someone who lived in Illinois, the judge did not mention anything about travel restrictions or house arrest. *Id* at 8-11.

Pelayo cites to no other evidence to support his claim that Smith was not allowed to be in Alabama. But, he asks this Court to find a factual dispute as to that issue. If the only evidence regarding Judge Murray's order came from the seemingly conflicting testimonies of Herbert Smith and Keisha Bravo, then Pelayo's argument would be more tenable. However, this Court finds no need to consider their testimony because the actual order is contained in the record. For this Court to find a factual dispute as to whether Smith was allowed to travel to Alabama, it would have to add language to Judge Murray's order. This it will not do. Judge Murray's order and the transcript of the bond reduction hearing speak for themselves. Smith was not explicitly prohibited from traveling anywhere nor was he subject to house arrest. Further, Pelayo has pointed to no evidence suggesting that house arrest or geographic restrictions are somehow the default for pretrial detainees like Smith unless the court orders otherwise.

This is further bolstered by Herbert Smith's deposition testimony where he testified that Carl Smith was a "GPS only" client who had "no restrictions." (Doc. 32-5 at 107). Bravo also stated as much. After testifying that Smith was a "GPS only" client, she described that status as follows: "GPS means you can go anywhere. You are not under a certain stipulation. You are not under a guideline. You don't have a boundary where you are only supposed to go. So [Carl Smith] was on GPS, so we never got the alert that he was outside of – in Scottsboro." (Doc. 32-13 at 35). Bravo testified that, because Smith had no geographic restrictions, the only alert ICU received was for a low battery. *Id.* at 64-65. When ICU received that alert on April 26, 2019, it created a report and notified the proper authorities. Accordingly, the Court does not find a genuine dispute as to whether Smith was allowed to travel to Alabama.

### b. ICU's characterization of Smith's conduct does not change Judge Murray's order.

ICU also claims the following is an undisputed fact:

> Although Ms. Bravo's report characterized the violation as an "escape," it was not actually an escape because ICU does not make a determination about whether or not an individual has "escaped;" it merely reports violations to the court.

(Doc. 31 at 7). In support of that contention, ICU again cites to Herbert Smith, III's and Keisha Bravo's deposition testimony, which supports its assertion. (Doc. 32-5 at 113); (Doc. 32-13, at 64-65).

10

In response, Pelayo stated: "ICU filed an escape report with Lake County law enforcement, and Carl Smith was charged with escape." (Doc. 34 at 1). However, the evidence Pelayo cites in support of that contention does not relate in any way to whether ICU filed an escape report or whether Smith was charged with escape. *See Id.*, citing (Doc. 32-3 at 52) (Herbert Smith, Jr., ICU's owner and president, testified about the dates ICU's contract with Lake County were in effect); (Doc. 32-5 at 98) (Herbert Smith, III, testified that Carl Smith was, at the time of the deposition, still being monitored by ICU and presently had "full restrictions" and was in home confinement.). Thus, Pelayo failed to carry his burden to come forward with specific factual evidence to support his contention. *See Gargiulo*, 131 F.3d at 999.

Moreover, even if Pelayo had cited evidence to properly support his contention that ICU filed an escape report and that Smith was subsequently charged with escape, the result would be the same. The relevant inquiry in this particular dispute is whether Judge Murray's order imposed geographical restrictions on Smith. ICU's or Bravo's characterization of Smith's conduct and any subsequent action by Lake County prosecutors charging Smith with escape do not carry the day for Pelayo. The undisputed facts show that Judge Murray placed no restrictions on Smith's travel. Therefore, ICU was not required under its contract to notify anyone when Smith traveled to Alabama.

    **c. Analysis**

Count VI of Pelayo's complaint alleged that ICU was negligent in its monitoring of Smith. "'To establish negligence, the plaintiff must prove: (1) a duty to a foreseeable plaintiff; (2) a breach of that duty; (3) proximate causation; and (4) damage or injury.'" *Hilyer v. Fortier*, 227 So. 3d 13, 22 (Ala. 2017), quoting *Albert v. Hsu*, 602 So. 2d 895, 897 (Ala. 1992). A review of Pelayo's complaint reveals that his negligence claim against ICU is premised on his assertion that ICU had a duty to monitor Smith and to notify the relevant authorities if Smith "escaped." *See* (Doc. 1-3 at 6). The Court questions whether ICU's contract with Lake County created a legal duty that would extend to Pelayo. However, the Court makes no finding as to that issue because, even if ICU had such a duty, the undisputed facts discussed above show that ICU did not breach its duty. Therefore, the Court finds no genuine issue of material fact as to whether ICU breached any legal duties. Consequently, Pelayo would be unable to prove at least one element of his negligence claim. Therefore, ICU's motion for summary judgment is due to be granted as to Count VI of Pelayo's complaint.

In Count VII of his complaint, Pelayo alleged that ICU's conduct was wanton. (Doc. 1-3 at 6-7). "'To establish wantonness, the plaintiff must prove that the defendant, with reckless indifference to the consequences, consciously and intentionally did some wrongful act or omitted some known duty." *See Hilyer*, 227 So. 3d at 22. For the reasons stated above, the Court concludes that there is no

factual dispute as to whether ICU committed any wrongful acts or omitted any known duties. Accordingly, Pelayo would be unable to prove his wantonness claim, and summary judgment is due to be granted as to Count VII of Pelayo's complaint.

These findings also defeat Pelayo's negligent hiring, training, and/or supervision claim against ICU alleged in Count X of his complaint. (Doc. 1-3 at 8-9). Because the undisputed facts show that its employees did not act negligently or wantonly, ICU cannot be said to have negligently hired, trained, or supervised any of its employees. Therefore, summary judgment is proper as to this claim as well.

### IV.   ICU's Motion to Strike

ICU also moved to strike the following exhibits:

- Exhibit 15, an April 30, 2019 letter from Oscar Martinez, Jr.;
- Exhibit 21, the accident report;
- Exhibit 22, a note prepared by Ryan Putman;
- Exhibit 24, the affidavit of Ryan Putman;
- Exhibit 25, the affidavit of Coty Durham; and
- Exhibit 27, the affidavit of Michael Zenk.

*See* (Doc. 51). However, the Court did not find it necessary to rely on any of these exhibits in reaching its decision. Further, ICU is entitled to summary judgment on all claims asserted against it and is due to be dismissed as a defendant. Therefore, the Court finds ICU's motion to strike (Doc. 51) to be moot.

## V. Conclusion

For the foregoing reasons, ICU's motion for summary judgment (Doc. 30) is **GRANTED**, and all claims against ICU, i.e., Counts VI, VII, and X of Pelayo's complaint, are hereby **DISMISSED WITH PREJUDICE.** Additionally, ICU's motion to strike (Doc. 51) is **MOOT**. The Clerk is directed to terminate ICU, Inc. as a defendant. The case remains pending as to the other defendants.

**DONE** and **ORDERED** March 29, 2022.

_____
**LILES C. BURKE**
UNITED STATES DISTRICT JUDGE